# UNITED STATES DISTRICT COURT

for the

Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information and electronic data associated with Cybertip #239487458 currently located at the Seattle FBI Office.

Case No. MJ26-461

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Information and electronic data associated with Cybertip #239487458 currently located at the Seattle FBI Office.

located in the Western District of Washington, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, for list of items to be seized, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2252(a)(4)(B), (b)(2) | Possession of Child Pornography |

The application is based on these facts:

See Affidavit of FBI Special Agent Katherine Schederbieschin.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Katherine Schederbieschin, Special Agent (FBI)
*Printed name and title*

This warrant is presented: ☑ by reliable electronic means ☐ telephonically recorded ☐ in person.

Date: July 24, 2026

[signature]
*Judge's signature*

City and state: Seattle, Washington

Paula L. McCandlis, United States Magistrate Judge
*Printed name and title*

USAO: 2026R00969

**AFFIDAVIT OF SPECIAL AGENT KATHERINE SCHEDERBIESCHIN**

STATE OF WASHINGTON )
) ss
COUNTY OF KING )

I, Katherine Schederbieschin, a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") in Seattle, Washington, being first duly sworn, hereby depose and state as follows:

## AFFIANT BACKGROUND

1. I have been employed by the FBI since October 2024 and am currently assigned to the Seattle Field Office and the Child Exploitation and Human Trafficking Task Force. I am cross assigned to Seattle Sound Regional Violent Crime Task Force. Prior to being assigned to the Seattle Division, I was assigned to the Los Angeles Field Office, Riverside Resident Agency, Riverside County Child Exploitation and Human Trafficking Task Force. As part of my current assignment, I investigate violations of federal law concerning child pornography and the sexual exploitation of children. I have gained experience through training in seminars, classes, and everyday work related to conducting these types of investigations. My involvement in investigations related to the sexual exploitation of children has included the execution of search and arrest warrants, operation planning, and interviewing victims, witnesses, and subjects.

2. Prior to the FBI, I was an enlisted Sailor in the United States Navy where I served 8 years active duty as an Aviation Ordnanceman and Survival, Evasion, Resistance and Escape (S.E.R.E) Instructor and currently still serve in a Naval Reserve Unit.

//

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## PURPOSE OF THE AFFIDAVIT

3. This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrants for the following described more fully in Attachment A:

a. Cybertip #239487458.

4. This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for Cybertip #239487458 and the electronic files contained therein for contraband and evidence, fruits, and instrumentalities of violations or attempted violations of Title 18 U.S.C. §2252A(a)(5)(B) (Possession of Child Pornography) which items are more specifically described in Attachment B of this Affidavit, which is incorporated by reference.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of Title 18 U.S.C. §2252A(a)(5)(B) (Possession of Child Pornography) are contained in the above-listed Cybertip.

## DEFINITIONS

The following definitions apply to this affidavit:

6. "Chat," as used herein, refers to any kind of text communication over the internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as internet forums and email.

7. For the purposes of this affidavit, a "minor" refers to any person less than eighteen years of age and for the purpose of this search warrant, "Child pornography," as


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

used herein, is defined in 18 U.S.C. § 2256 (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

8. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. See 18 U.S.C. § 2256(2).

9. "Cloud-based storage service," as used herein, refers to a publicly accessible, online storage provider that collectors of depictions of minors engaged in sexually explicit conduct can use to store and trade depictions of minors engaged in sexually explicit conduct in larger volumes. Users of such a service can share links and associated passwords to their stored files with other traders or collectors of depictions of minors engaged in sexually explicit conduct in order to grant access to their collections. Such services allow individuals to easily access these files through a wide variety of electronic devices such as desktop and laptop computers, mobile phones, and tablets, anywhere and at any time. An individual with the password to a file stored on a cloud-based service does not need to be a user of the service to access the file. Access is free and readily available to anyone who has an internet connection.

10. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

related to or operating in conjunction with such device," including smartphones and mobile devices.

11. "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse that process in order to restore it.

12. "Data," as used herein refers to the quantities, characters, or symbols on which operations are performed by a computer, being stored and transmitted in the form of electrical signals and recorded on magnetic, optical, or mechanical recording media.

13. "Digital Devices" as used herein refers to any physical object that has a computer, microcomputer, or hardware that is capable of receiving, storing, possessing, or potentially sending data.

14. "File Transfer Protocol" ("FTP"), as used herein, is a standard network protocol used to transfer computer files from one host to another over a computer network, such as the internet. FTP is built on client-server architecture and uses separate control and data connections between the client and the server.

15. "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations, community-owned, non-profit, or otherwise privately-owned companies that are in business to provide individuals and businesses access to the internet. ISPs provide a range of functions for their customers including access to the internet, web



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

16. "Mobile applications," as used herein, are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.

17. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

18. "Remote Computing Service" ("RCS"), is the provision to the public of computer storage or processing services by means of an electronic communications system.

19. "User Attributes," as used herein refers to any tangible data, documents, settings, programs, or other information that provides information related to the identity of the specific user of the device, computer, application, program, or record.

## BACKGROUND

Based on my training, experience and collaboration with other law enforcement officers that investigate child exploitation, as well as industry experts, academia and other service providers, I know the following:

20. That adult persons with a sexual interest in minors are persons whose sexual targets are children. They receive sexual gratification and satisfaction from actual physical contact with children, fantasy involving the use of writings detailing physical contact with children, and/or from fantasy involving the use of pictures and/or videos of minors.

21. The development of the computer has changed the way children are engaged in sexually explicit conduct and the files created therefrom are distributed thereafter. The computer serves four functions in connection with depictions of children



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

engaged in sexually explicit conduct. These four functions include: production, communications, distribution, and storage.

22. Pornographers produce both still and moving images, i.e.: photographs and video. These files can be transferred either directly from the camera/camera phone into a computer or mobile application, directly from a storage device such as a flash drive to a computer, or the image files can be transferred directly into the computer by use of a scanner.

23. In addition to data sharing between phones, mobile and desktop applications, and websites, e-mail may also be used electronically transmit files through a user's electronic device.

24. All that a smart phone or computer user needs to do in order to use an application, website, or email is open up an account with one of the myriad of companies that provide services (e.g., Meta, Microsoft, Google, Discord, Snapchat, Dropbox, etc.). Once the account is set up, the user can choose the "name" of his/her account, which does not have to match (or even relate to) identifying information of the user. Thus, the username by itself does nothing to identify the owner of the account, the user, or the composer of the communication. Nevertheless, often times the communications themselves, contain information that either directly or indirectly identifies the composer of the file. Based on my training and experience investigating child exploitation offenses, I know it is common for collectors of depictions of minors engaged in sexually explicit conduct to use multiple social media accounts and/or applications in order conceal their true identity and/or more easily categorize their collection according to the type of material or source.

25. Individuals involved in computer-related crimes often use these accounts to conduct both criminal and non-criminal communications. Consequently, these communications can be a great source of information to help identify the sender and/or recipient of the file and/or message. The ability to view these communications by



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

investigating law enforcement often provides further investigative leads to assist in identifying the person of interest.

26. I know that an Internet Protocol (IP) address is a numerical label assigned to devices communicating on the internet and that the Internet Assigned Numbers Authority (IANA) manages the IP address space allocations globally. An IP address provides the methodology for communication between devices on the internet. It is a number that uniquely identifies a device on a computer network and, using transport protocols, moves information on the internet. Every device directly connected to the internet must have a unique IP address.

27. An IP address is typically comprised of four (4) series of numbers separated by periods and is most commonly represented as a 32-bit number such as 71.227.252.216 (Internet Protocol Version 4). IPv6 is deployed as well and is represented as a 128-bit number such as 2001:db8:0:1234:0:567:8:1.

28. IP addresses are owned by the Internet Service Provider and leased to a subscriber/customer for a period of time. They are public and visible to others as you surf the internet. The lessee has no expectation of privacy due to the public nature of IP addresses.

29. When an Internet Service Provider's customer logs onto the internet using a computer or another web-enabled device, they are assigned an Internet Protocol (IP) address.

30. There are two different types of Internet Protocol addresses. The first is a dynamic IP address, which means the user's IP address may change each time they log on to the internet. The frequency in which this address changes is generally controlled by the Internet Service Provider and not the user. The other type of IP address is a static IP address, which means that a user is assigned a specific IP address that remains constant every time they log on to the internet.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

31. IP addresses are similar to a license plate on a motor vehicle. They are the property of the issuer, and not the vehicle owner. Just as your license plate is visible as you cruise your city or town, your IP address is visible as you cruise the internet. Your IP address is visible to the administrators of websites you visit, attached emails you send, and broadcast during most internet file and information exchanges that occur on the internet.

32. I know based on my training and experience, that Electronic Service Providers ("ESP") and/or Internet Service Providers ("ISP," collectively ISP) typically monitor their services utilized by subscribers. To prevent their communication networks from serving as conduits for illicit activity and pursuant to the terms of user agreements, ISPs routinely and systematically attempt to identify suspected depictions of minors engaged in sexually explicit conduct that may be sent through its facilities. Commonly, customer complaints alert them that an image or video file being transmitted through their facilities likely contains suspected depictions of minors engaged in sexually explicit conduct.

33. When an ESP/ISP receives such a complaint or other notice of suspected depictions of minors engaged in sexually explicit conduct, they may employ a "graphic review analyst" or an equivalent employee to open and look at the image or video file to form an opinion as to whether what is depicted likely meets the federal criminal definition of depictions of minors engaged in sexually explicit conduct found in 18 USC §2256, which is defined as any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where: (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

modified to appear that an identifiable minor is engaging in sexually explicit conduct. If the employee concludes that the file contains what appears to be depictions of minors engaged in sexually explicit conduct, a hash value of the file can be generated by operation of a mathematical algorithm. A hash value is an alphanumeric sequence that is unique to a specific digital file. Any identical copy of the file will have exactly the same hash value as the original, but any alteration of the file, including even a change of one or two pixels, results in a different hash value. Consequently, an unknown image can be determined to be identical to an original file if it has the same hash value as the original. The hash value is, in essence, the unique fingerprint of that file, and when a match of the "fingerprint" occurs, the file also matches. Several different algorithms are commonly used to hash-identify files, including Message Digest 5 (MD5) and Secure Hash Algorithm 1 (SHA-1).

34. Hash values are a very reliable method of authenticating files. It can be concluded with an extremely high degree of certainty that two files sharing the same hash value also share identical content. Based on my training and experience, as well as others in this field, I know it is more likely that two humans would share the same biological DNA than for two files to share the same hash value. If even one bit (the smallest measure of data in a file) of a file is changed, the entire hash value of that file changes completely. As an example that demonstrates the uniqueness of a SHA-1 hash, the likelihood of two files having the same SHA-1 hash value is $2^{128}$ or:1 in 340,000,000,000,000,000,000,000,000,000,000,000,000 chance. In an August 6, 2020 article in Live Science[1], according to Professor Simona Francese, PhD, a forensic scientist and fingerprint expert from Sheffield Hallam University in the United Kingdom,

---

[1] Baker, Harry. "Do Identical Twins Have Identical Fingerprints?" LiveScience, Purch, 7 Aug. 2021, https://www.livescience.com/do-identical-twins-have-identical-fingerprints.html.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the likelihood of two humans having the same fingerprint is estimated to be:1 in 64,000,000,000.[2]

35. For two different files to have the same hash value is called a *collision.* I know from experience that there have been no documented incidents of a collision involving SHA-1 hash values "in the wild" since its creation in 1995. I am, however, aware of a reported collision involving two files sharing the same SHA-1 value in a lab setting. This was done purposely by engineers at Google[3] in 2017 under controlled conditions for the sole purpose of creating this collision. Even with this knowledge in mind, I am confident that the possibility of a suspected child sexual abuse material file reported in a CyberTip having the same hash value as an unrelated, non-criminal file is extremely unlikely. I believe hash value comparison is a highly reliable method of determining if two files are the same or different, and that a confirmed hash match between two files is a forensic finding on a par with a DNA match or a fingerprint match.

36. ESPs typically maintain a database of hash values of files that they have determined to meet the federal definition of depictions of minors engaged in sexually explicit conduct found in 18 USC § 2256. The ISPs typically do not maintain the actual suspect files themselves; once a file is determined to contain suspected depictions of minors engaged in sexually explicit conduct, the file is deleted from their system.

37. The ESPs can then use Image Detection and Filtering Process ("IDFP"), Photo DNA (pDNA), or a similar technology which compares the hash values of files embedded in or attached to transmitted files against their database containing what is essentially a catalog of hash values of files that have previously been identified as containing suspected depictions of minors engaged in sexually explicit conduct.

---

[2] Of note, in the same article, Professor Francese, who is a peer-reviewed, published scientist, commented, "to this day, no two fingerprints have been found to be identical."

[3] "Announcing the First sha1 Collision." *Google Online Security Blog*, 23 Feb. 2017, https://security.googleblog.com/2017/02/announcing-first-sha1-collision.html.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

38. When the ESP detects a file passing through its network that has the same hash value as an image or video file of suspected depictions of minors engaged in sexually explicit conduct contained in the database through a variety of methods, the ISP reports that fact to National Center for Missing and Exploited Children (NCMEC) via the latter's CyberTipline. By statute, an ESP or ISP has a duty to report to NCMEC any apparent depictions of minors engaged in sexually explicit conduct it discovers "as soon as reasonably possible." 18 U.S.C. § 2258A(a)(1). The CyberTip line report transmits the intercepted file to NCMEC. Often that occurs without an ISP employee opening or viewing the file because the files hash value, or "fingerprint," has already been associated to a file of suspected depictions of minors engaged in sexually explicit conduct. The ISP's decision to report a file to NCMEC is made solely on the basis of the match of the unique hash value of the suspected depictions of minors engaged in sexually explicit conduct to the identical hash value in the suspect transmission.

39. ESP's also monitor which devices are used to access their platform by recording the advertising identification number. This number is a unique identifier assigned to hardware devices used by ESPs to track users semi-anonymously and provide targeted advertisements. Because it is a unique identifier, this information can link specific devices owned by specific individuals with the criminal activity on a particular platform's account.

40. A push token is a unique alpha-numeric code generated by Apple or Google and assigned to a specific device when an app is installed on that device. It provides a connection between the app and that specific device. The purpose of this connection is to facilitate push notifications, allowing the app to send notifications to the user when a new message or update is available. While users can disable push notifications on their devices, the app company may still retain the push token ID. After a push token is installed, whenever the application provider needs to send notifications to the user's device, it sends both the Push Token and the content to the service provider (Apple or



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Google) who routes it to the user's device. Push tokens are intended to be long-lived and remain valid as long as the app is installed, and the user doesn't take any actions that would invalidate them. However, tokens can expire or be updated. For example, clearing the app's data can invalidate the token. Social media companies and other application providers keep records relating to push tokens and can typically provide push tokens related to a specific account. Law enforcement can then follow up with Apple or Google to get information related to the specific device assigned that unique push token. That information can include device identifiers, email addresses, IP address logs, and account identifiers.

41. Most Internet Service Providers keep subscriber records relating to the IP address they assign, and that information is available to investigators. Typically, an investigator has to submit legal process (e.g. subpoena or search warrant) requesting the subscriber information relating to a particular IP address at a specific date and time.

42. A variety of publicly available websites provide a public query/response protocol that is widely used for querying databases in order to determine the registrant or assignee of internet resources, such as a domain name or an IP address block. These include WHOIS, MaxMind, arin.net, and other common search tools.

43. The act of "downloading" is commonly described in computer networks as a means to receive data to a local system from a remote system, or to initiate such a data transfer. Examples of a remote system from which a download might be performed include a webserver, FTP server, email server, or other similar systems. A download can mean either any file that is offered for downloading or that has been downloaded, or the process of receiving such a file. The inverse operation, "uploading," refers to the sending of data from a local system to a remote system such as a server or another client with the intent that the remote system should store a copy of the data being transferred, or the initiation of such a process.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

44. The National Center for Missing and Exploited Children (NCMEC) is a private, non-profit organization established in 1984 by the United States Congress. Primarily funded by the Justice Department, the NCMEC acts as an information clearinghouse and resource for parents, children, law enforcement agencies, schools, and communities to assist in locating missing children and to raise public awareness about ways to prevent child abduction, child sexual abuse and depictions of minors engaged in sexually explicit conduct.

45. The Center provides information to help locate children reported missing (by parental abduction, child abduction, or running away from home) and to assist physically and sexually abused children. In this resource capacity, the NCMEC distributes photographs of missing children and accepts tips and information from the public. It also coordinates these activities with numerous state and federal law enforcement agencies.

46. The CyberTipline offers a means of reporting incidents of child sexual exploitation including the possession, manufacture, and/or distribution of depictions of minors engaged in sexually explicit conduct; online enticement; child prostitution; child sex tourism; extra familial child sexual molestation; unsolicited obscene material sent to a child; and misleading domain names, words, or digital images.

47. Any incidents reported to the CyberTipline online or by telephone go through this three-step process: CyberTipline operators review and prioritize each lead; NCMEC's Exploited Children Division analyzes tips and conducts additional research; The information is accessible to the FBI, ICE, and the USPIS via a secure Web connection. Information is also forwarded to the ICACs and pertinent international, state, and local authorities and, when appropriate, to the ESP.

48. Based upon my knowledge, experience, and training in depictions of minors engaged in sexually explicit conduct investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that there are certain characteristics common to individuals involved in depictions of minors engaged in sexually explicit conduct:

a. Those who possess, receive, and attempt to receive depictions of minors engaged in sexually explicit conduct may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b. Those who possess, receive, and attempt to receive depictions of minors engaged in sexually explicit conduct may collect sexually explicit or suggestive materials in a variety of media, including photographs and videos. Such individuals often times use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts. These individuals may keep records, to include names, contact information, and/or dates of these interactions, of the children they have attempted to seduce, arouse, or with whom they have engaged in the desired sexual acts.

c. Those who possess, receive, and attempt to receive depictions of minors engaged in sexually explicit conduct often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly.

d. Those who possess, receive, and attempt to receive depictions of minors engaged in sexually explicit conduct also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other depictions of minors engaged in sexually explicit conduct distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in depictions of minors engaged in sexually explicit conduct.

e. Those that possess, receive and attempt to receive depictions of minors engaged in sexually explicit conduct prefer not to be without their depictions of minors engaged in sexually explicit conduct for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of depictions of minors engaged in sexually explicit conduct throughout the world.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

49. Based on my training and experience, collectors and distributors of depictions of minors engaged in sexually explicit conduct also use online, remote, resources to retrieve and store depictions of minors engaged in sexually explicit conduct, including services offered by many companies for cloud-storage and digital communications. The online services allow a user to set up an account with a remote computing service that provides email services and/or electronic storage of electronic files in any variety of formats. A user can set up, and access, an online storage account from any computer or digital device with access to the internet. Evidence of such online storage of depictions of minors engaged in sexually explicit conduct is often found on the user's computer or smart phone. Even in cases where online storage is used, however, evidence of depictions of minors engaged in sexually explicit conduct can be found on a user’s digital device if that device is used to access the internet. Cloud storage allows the offender ready access to the material from any device that has an internet connection, worldwide, while also attempting to obfuscate or limit the criminality of possession as the material is stored remotely and not on the offender’s device. Evidence located in cloud storage may be deleted from any device capable of reaching the website of the cloud hosting company. Once the individual user credentials, often a username and password are entered, the data in the cloud storage may be accessed, modified, shared, or deleted. Unlike deleting data from a local hard drive, once data is deleted from cloud storage, it is wiped from the cloud hosting company’s servers and is unrecoverable.

50. In addition to the traditional collector, law enforcement has encountered offenders who obtain depictions of minors engaged in sexually explicit conduct from the internet, view the contents and subsequently delete the contraband, often after engaging in self-gratification. In light of technological advancements, increasing internet speeds and worldwide availability of child sexual exploitative material, this phenomenon offers the offender a sense of decreasing risk of being identified and/or apprehended with quantities of contraband. This type of consumer is commonly referred to as a ‘seek and


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

delete' offender, knowing that the same or different contraband satisfying their interests remain easily discoverable and accessible online for future viewing and self-gratification.

51. Additionally, offenders may opt to store the contraband in cloud accounts. Cloud storage is a model of data storage where the digital data is stored in logical pools, the physical storage can span multiple servers, and often locations, and the physical environment is typically owned and managed by a hosting company. Cloud storage allows the offender ready access to the material from any device that has an internet connection, worldwide, while also attempting to obfuscate or limit the criminality of possession as the material is stored remotely and not on the offender's device.

52. Based on my training and experience and my consultation with computer forensic detectives and agents who are familiar with searches of computers and smartphones, I have learned that offenders will try and obfuscate data containing images and videos of minors engaged in sexual activity. One potential manner of trying to hide the contraband may be by changing file extensions. For example, an image file may often have a file extension of ".jpg" of ".jpeg" signifying that it is an image or photograph. An offender may change the file extension by selecting the "save as" format on a computer or digital device and select ".doc" or ".docx" to make it appear that instead of a contraband image or photograph, it is a word document. The same process may be used to attempt to hide a video file as well. Based on these, and other attempts to hide potential contraband is necessary for forensic examiners to examine all potential data on a digital device.

53. I know that, regardless of whether a person discards or collects depictions of minors engaged in sexually explicit conduct he accesses for purposes of viewing and sexual gratification, evidence of such activity is likely to be found on computers and related devices, including storage media, used by the person. This evidence may include the files themselves, logs of account access events, contact lists of others engaged in



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

trafficking of depictions of minors engaged in sexually explicit conduct, backup files, and other electronic artifacts that may be forensically recoverable.

## BACKGROUND CONCERNING SNIFFIES LLC

54. From the internet, I know that Sniffies, LLC is a geographic location based social networking platform that allows users to communicate with each other in a digital mapping interface. On the Sniffies website, Sniffies indicates that it is a "modern, map-based, meetup app for gay, bi, and curious Cruisers. (Someone who meets at parks, restrooms, cars or truck stops for gay sex). It's fast, fun, and free to use… Sniffies is carefully crafted with groundbreaking tools and cutting-edge features designed to make meeting Cruisers as quick, easy, and exciting as possible." It was launched in 2018 by founder Blake Gallagher in Seattle, WA.

55. The website, https://sniffies.com/map/pages/about-sniffies informs prospective users that "the Sniffies map updates in real time, showing nearby Cruisers, active groups, and popular meeting spots."

56. In their "Terms of Service Agreement," Sniffies indicates in part, " By creating an account, you state to us that (a) all account registration and profile information you provide is your own and is accurate; (b) if you previously had an account on the Platform, we did not suspend or terminate that account for breach of this agreement; and (c) you are creating an account for your personal use, and you will not sell, rent, or transfer your account to anyone."

In their "Privacy Policy," Sniffies indicates that they collect the following data from users of the application:

- Location Data includes your general location disclosed by GPS technology or your Internet Service Provider. The Platform does not collect or store your actual location. The Platform does collect data related to your "commits" or "check-ins" to a place on the map, which includes user-



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

generated coordinates associated with that place that may or may not be accurate and actual.

- Message Data includes contents of any public or private messages you send through the Platform.
- Comment Data includes contents of any public or private comments you post through the Platform.
- Content Data includes private or public photos, videos, or other digital content.
- Profile Data includes the public information you choose to add to your publicly displayed profile, such as your profile headline or description.
- Usage Data includes information about how you use our Platform, products, and services.
- Marketing and Communications Data includes your preferences in receiving marketing from us and our third parties and your communication preferences and any feedback or data transmitted to us via email.

## **SUMMARY OF PROBABLE CAUSE**

Cybertip #239487458

57. On or about May 12, 2026, at 13:16:47 hours UTC, the Electronic Service Provider (ESP) Sniffies, L.L.C., reported to the National Center for Missing and Exploited Children (NCMEC) via Cybertip #239487458, that a user had uploaded files containing depictions of a minor(s) engaging in sexually explicit conduct to his/her account. Specifically, Sniffies reported User ID 694cae7ddf510f6f49ce054e uploaded 45 files depicting suspected minors engaging in sexually explicit conduct on May 12, 2026, at 13:16:47 UTC. Sniffies provided the IP address 174.224.193.69 (Login) associated with the USER ACCOUNT and documented the ESP Product/Service utilized was Sniffies Web Application. Sniffies further reported User ID 694cae7ddf510f6f49ce054e had an estimated location of Phinney Ridge, Washington, an address of Redmond,



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Washington 98052, an email of nateeood.az@yahoo.com and a Profile URL https://sniffies.com/profile/694cae7ddf510f6f49ce054e. The CyberTip indicated that the child sexual abuse depictions attached to the report were (1) not viewed and were not public OR (2) the ESP failed to include whether they were public or viewed.

58. Sniffies provided the communications between the SUSPECT USER and another user in which the SUSPECT USER messaged about possessing child sexual abuse videos, having a sexualized interest in minor males ages 12-16 years. Sniffies provided the chat between the SUSPECT USER (relevant portions in bold) and the unidentified user:

2026-05-11T11:37:12.024Z, null

2026-05-11T11:37:12.024Z, null

**2026-05-11T11:37:02.198Z, Hey how's it going?**

2026-05-11T10:59:07.218Z, null

2026-05-11T10:59:07.218Z, null

2026-05-11T10:59:07.218Z, null

2026-05-11T10:59:07.218Z, null

**2026-05-11T10:58:53.990Z, High** 😊 😊

2026-05-11T10:43:05.430Z, null

2026-05-11T10:43:05.430Z, null

2026-05-11T10:43:05.430Z, null

**2026-05-11T10:42:58.217Z, Fuuuck you're a god**

**2026-05-11T10:03:33.497Z, Any pics?**

2026-05-11T10:03:04.136Z, null

**2026-05-11T10:02:59.978Z, Into perv older bros?**

**2026-05-11T10:00:24.057Z, Perv older bro trying to drive around and goon**

2026-05-11T10:00:06.825Z, null

**2026-05-11T10:00:03.834Z, Heyyy**



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2026-05-11T09:58:16.409Z, null

**2026-05-11T09:58:13.915Z, Into perv older bros?**

**2026-05-11T09:50:50.141Z, I can host or drain you in my car if you can't travel**

**2026-05-11T09:50:14.938Z,** 😍😍😍

2026-05-11T09:48:48.692Z, null

**2026-05-11T09:48:42.615Z, Fuck I would worship that thing**

2026-05-11T09:43:47.411Z, null

**2026-05-11T09:43:36.705Z, Hey there. Headed to south park here soon. lmk if you want your cock drained?**

**2026-05-11T09:37:07.243Z, Hey! Sorry I keep missing you**

**2026-05-11T08:23:48.455Z, Yea for sure. age/pics?**

**2026-05-11T08:20:22.046Z, Heyyy what's up?**

**2026-05-11T08:02:41.544Z, Hey what are you up to?**

2026-05-11T07:54:29.756Z, null

**2026-05-11T07:54:21.446Z, Perv older bro here. Very down to chill**

**2026-05-11T07:48:43.563Z, Any more pics?**

**2026-05-11T07:48:36.106Z, Find somewhere to park or drive around**

**2026-05-11T07:48:25.324Z, I can drive. If you need to sneak out I have a huge jeep rubicon we can hang in**

**2026-05-11T07:47:24.771Z, No recipe ]needed just want to make you feel good**

2026-05-11T07:47:06.259Z, null

2026-05-11T07:47:06.259Z, null

2026-05-11T07:47:06.259Z, null

2026-05-11T07:47:06.259Z, null

2026-05-11T07:47:06.259Z, null



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2026-05-11T07:47:06.258Z, null

**2026-05-11T07:46:14.758Z, I want you so much more now**

**2026-05-11T07:45:54.829Z, Ive got my own place if you want to come by, put on my AR glasses and sit back , watch porn while I serve your cock?**

**2026-05-11T07:43:49.507Z, Not too young but under 18 fuck yea**

2026-05-11T07:43:26.714Z, null

**2026-05-11T07:43:19.245Z, Perv older bro here. Having in my goon den rn**

2026-05-11T07:42:25.865Z, null

**2026-05-11T07:42:19.179Z, Into getting worshipped and served. Perv older bro here**

2026-05-11T07:41:27.055Z, null

2026-05-11T07:41:27.055Z, null

2026-05-11T07:41:17.501Z, null

**2026-05-11T07:41:12.803Z, Fuck I want to worship and serve your young body. Daddy bear here**

2026-05-11T07:40:20.762Z, null

**2026-05-11T07:40:14.945Z, Into perv dads?**

**2026-05-10T05:01:11.895Z, NTmilford88**

**2026-05-10T05:00:47.758Z, Around 8k vids**

**2026-05-10T05:00:08.353Z, Hey there. You admin?**

**2026-05-10T04:38:50.244Z, Stop messaging me**

**2026-05-10T04:38:30.067Z, Harassment needs to stop at the harasser. Your behavior needs to change**

**2026-05-10T04:37:19.623Z, ??**

**2026-05-10T04:36:08.816Z, You make this so easy**

**2026-05-10T04:35:23.894Z, This is harassment. Now I face screen shots for my case on you**



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**2026-05-10T04:34:22.843Z, There you go again. Stop messaging me.**

**2026-05-10T04:31:25.942Z, You keep engaging**

**2026-05-10T04:30:58.142Z, You don't even know**

**2026-05-10T04:30:49.172Z, There is more too**

**2026-05-10T04:30:18.832Z, Good job.**

**2026-05-10T04:29:22.081Z, Harassment/bullying and stalking**

**2026-05-10T04:29:03.160Z, You are reported**

**2026-05-10T04:27:51.879Z, Not**

**2026-05-10T04:27:47.811Z, That's but what it means**

**2026-05-10T04:27:42.035Z, You fucking idiot**

**2026-05-10T04:27:21.444Z, For what?**

**2026-05-09T20:35:22.230Z, Nice I'll hit you up now I'm nursenate130**

2026-05-09T14:48:46.092Z, null

**2026-05-09T14:48:43.206Z, Into perv dads?**

2026-05-09T14:30:55.490Z, null

**2026-05-09T14:30:55.467Z, 2067712242**

**2026-05-09T14:28:42.550Z, Want to swap numbers or snap?**

**2026-05-09T14:28:29.674Z, Address is 4116 Fremont Ave N 98103**

**2026-05-09T14:27:38.171Z, Removed sorry**

2026-05-09T14:24:29.655Z, null

**2026-05-09T14:24:26.821Z, Heyyy there**

**2026-05-09T14:23:43.873Z, Several would be nice. Idk see how it goes**

**2026-05-09T14:16:55.821Z, Have plenty of favors too fyi**

**2026-05-09T14:15:43.684Z, Let's do it. I can host. Have my own place. Can travel too or in the car**



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**2026-05-09T14:12:39.138Z, Open to anything but mostly someone to goon with. I've got some kinda taboo 🍕 content to edge to. Jerk off maybe more. Hbu?**

2026-05-09T13:53:15.717Z, null

**2026-05-09T13:53:12.512Z, You're cute. Trying to blow clouds and hang**

2026-05-09T13:39:27.845Z, null

**2026-05-09T13:39:20.595Z, You seriously look like a god. Into getting worshipped and served?**

2026-05-09T13:36:32.587Z, null

**2026-05-09T13:36:28.465Z, You are hot. Into getting worshipped and served?**

**2026-05-09T13:30:35.172Z, Just edging and spun af hbu?**

2026-05-09T13:30:16.029Z, null

**2026-05-09T13:30:10.691Z, Heyyy**

**2026-05-09T10:56:01.488Z, 👍 👍**

**2026-05-09T10:53:36.682Z, Infront of Sam's smoke**

**2026-05-09T10:51:46.643Z, 1 min**

59. Cybertip #239487458 includes files submitted to NCMEC by Sniffies from the SUSPECT USER's chat but indicated that the child sexual abuse depictions attached to the report were not viewed and were not public or the ESP failed to include whether the files were public or viewed.

60. Based on my training and experience and discussions with other law enforcement agents and forensic examiners, there are instances when ISPs/ESPs/Social Media websites may suspect that a file contains depictions of minors engaged in sexually explicit conduct and therefore have provided the file to NCMEC only to have law enforcement subsequently determine the image fails to meet chargeable standards of child exploitation under 18 USC § 2256 or other applicable standard.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

61. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that the files submitted as part of CyberTip #239487458 contain evidence of criminal offenses, namely, violations of Title 18, United States Code, Sections 2252(a)(4)(B), (b)(2) and contain child pornography as defined by 18 U.S.C. § 2256. Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the contents and attachments of CyberTip #239487458.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

62. Based upon the above facts and circumstances I request that a search warrant be issued directing the search of CyberTip #239487458 and the electronic files included therein, currently located at the Seattle FBI Office. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

//

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **CONCLUSION**

63. Based on the foregoing, there is probable cause to believe that Cybertip #239487458 will contain contraband and evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252(a)(4)(B), (b)(2), as described in Attachment B, will be contained in Cybertip #239487458, as described in Attachment A.

64. The affidavit and application are being presented by reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

Katherine Schederbieschin, Affiant
Special Agent, Federal Bureau of Investigation

The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone on this 24th day of July, 2026.

PAULA L. MCCANDLIS
United States Magistrate Judge



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information and electronic data associated with Cybertip #239487458 currently located at the Seattle FBI Office.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# <u>ATTACHMENT B</u>

## Particular Things to be Seized

From Attachment A above, CyberTip #239487458 to include all electronic files provided with or attached to the Cybertip, for evidence of the crimes of Possession of Child Pornography in violation of Title 18, United States Code, Sections 2252(a)(4)(B), (b)(2).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970